IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Estate of VIRGINIA ELLER     :
                             :
v.                           :     Civil Action WMN-02-0077
                             :
HAROLD WAYNE ELLER, SR.      :

**MEMORANDUM**

Before the Court are: Defendant's Motion for Summary Judgment (Paper No. 6) and Plaintiff's Motion to Dismiss, for Stay, or for Summary Judgment (Paper No. 7). The motions have been fully briefed and are ripe for decision. Upon review of the pleadings and applicable case law, the Court finds that no hearing is necessary (Local Rule 105.6) and that Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion to Dismiss, for Stay, or for Summary Judgment will be denied.

This is an interpleader action filed by the Robert G. Preston Excavating Company, Inc. Profit Sharing Plan (the "Plan"). The Plan is a qualified profit sharing plan created and operated under the requirements of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. Named as defendants were Harold Wayne Eller, Sr., a participant in the Plan, and the Estate of Virginia Eller (the Estate). Virginia was the wife of Harold Eller, Sr. until they divorced on March 9, 2001. Virginia died on September 28, 2001. Both Mr. Eller and

the Estate made claims for benefits under the Plan which led to the filing of the instant action. The Court subsequently realigned the parties, making the Estate the Plaintiff, and Harold Eller, Sr. the Defendant.

As part of their divorce, Harold and Virginia agreed to a Consent Order, drafted by Virginia's attorney, Wilbur Bolton, which provided in pertinent part,

> L. The Plan Administrator for [Harold Wayne Eller's, Sr.'s] interest in [the Plan] shall distribute directly to [Virginia Eller], by way of a roll-over to her designated plan, 50% of the total value in the Plan, not to exceed ½ of $50,000 as indicated on Statement of Account for Plan dated 12/31/99/ . . .
>
> M. [Harold Wayne Eller, Sr.] assigns to [Virginia Eller] one-third (1/3) of the pre-retirement death benefits, not to exceed 1/3 of $126,000.00 . . . but a lesser amount if value of said pre-retirement death benefit has decreased at the time of plaintiff's death.
>
> N. [Harold Wayne Eller, Sr.] assigns to [Virginia Eller] one-third (1/3) of the proceeds from life insurance benefits incident to the Plan, not to exceed 1/3 of $76,000.00 . . . but a lesser amount if value of said insurance benefit has decreased at the time of plaintiff's death.

June 27, 2000 Consent Order.

Bolton next drafted a Qualified Domestic Relations Order (QDRO) which was approved by the Circuit Court for Harford County on March 13, 2001. This QDRO provides as follows:

> 3) The Plan Administrator for Participant's interest in [the Plan], shall distribute, directly to Alternate Payee [Virginia Eller], by way of a roll-over to her designated plan, Fifty Percent (50%) of the total value in the Plan, not to exceed one-half (½) of Fifty Thousand Dollars ($50,000) . . . <u>when, if, and as paid</u> to the Participant.
>
> 6) [The Plan] . . . will pay benefits to the Alternate Payee in accordance with [Md. Code. Ann. Fam. Law, § 8-205] and based on the following formula. Alternate Payee is hereby assigned Fifty Percent (50%) of the total value of the Participant's profit sharing plan & trust account (not to exceed ½ of $50,000.00), which he has earned through his employment . . . said Fifty Percent (50%) interest to be calculated as of December 31, 1999. Participant [Harold Eller] assigns to the Alternative Payee, 50% of assets of account as of December 31, 1999 (not to exceed $50,000, in value), plus all accretions and losses attributable to the Alternate Payee's 50%, rolled over into a separate account for the Alternative Payee.
>
> 7) The Alternate Payee <u>shall commence her portion of the benefit plan when eligible in accordance with the Plan. Payments will continue until the Alternate Payee's death</u>.

QDRO dated March 13, 2001, at ¶3, ¶7 (emphasis added). This QDRO made no mention of the pre-retirement death benefits or the life insurance benefits.

When the Consent Order and QDRO were forwarded to the Plan administrator, the administrator noted several problems. First, she noted that Virginia's share of the Plan account should be paid out as an "immediate lump sum distribution," not "if, as and

3

when." Pl.'s Exh. 3. She also noted that the pre-retirement death benefit in the Consent Order was incorrectly calculated and should have been limited to ½ of $76,000, not $126,000.[1] Finally, she indicated that she would be unable to pay any death benefit, either pre- or post-retirement, as that provision was not included in the QDRO.

The correspondence submitted with the pleadings makes no further mention of the issue as to whether the ½ share of the Plan account was immediately payable, or payable at some later time. That correspondence does reflect that the parties reached an agreement that the pre-retirement death benefit was incorrectly calculated. The parties agreed to modify the consent order to reflect that recalculation, and to amend the QDRO to include a provision concerning the life insurance benefits. The order modifying the consent order and the amended QDRO were drafted but were never approved by the Harford County Circuit Court.

Defendant now moves for summary judgment, arguing that no benefits from the Plan are due Plaintiff. Defendant contends that, under ERISA, a duly approved QDRO is the only acceptable method for a divorced spouse to attach an interest in a former

---

[1] Apparently, Bolton incorrectly added the Plan account balance to the face value of the insurance policy, having misread Defendant's Plan statement.

spouse's benefit plan and that neither Virginia Eller or the Estate are entitled to any benefits under the terms of the QDRO, as approved by the Circuit Court for Harford County.  Plaintiff has moved for summary judgment, arguing that the QDRO contains "defects" that render its language a "nullity."  Pl.'s Mot. at ¶¶ 3, 8.  Instead, Plaintiff argues, the Court should enforce the terms of the Consent Order that manifest the "clear intent of the parties."  Id. at ¶ 15.  Plaintiff requests, in the alternative, that this Court stay or dismiss this action in order to let the parties "fight it out in state court."  Id. at ¶ 13.

The Court turns first to that portion of Plaintiff's pleadings in which it asks the Court to dismiss this action.  See Pl.'s Supplemental Memorandum, Paper No. 9.  Although the focus of this pleading is somewhat obscure, it would appear that Plaintiff is arguing that this Court has no jurisdiction over this dispute.  Directing the Court's attention to a 1988 Supreme Court decision which held that the Parental Kidnaping Prevention Action of 1980 does not provide an implied cause of action in federal court to determine which of two conflicting state custody decisions is valid, Plaintiff suggests that, similarly, ERISA simply provides a rule of decision to be followed by the state courts.  Id. (citing Thompson v. Thompson, 484 U.S. 174, 183 (1988)).  While novel, Plaintiff's argument ignores a well

established principle under ERISA that "the federal courts have jurisdiction over an action for interpleader to determine the proper beneficiary of benefits payable from an ERISA employee welfare plan". <u>Central States, Southeast and Southwest Areas Pension Fund v. Howell</u>, 227 F.3d 672, 674 n. 2 (6th Cir. 2000); <u>see also</u>, <u>Metropolitan Life Ins. Co. v. Marsh</u>, 119 F.3d 415, 418 (6th Cir.1997)(holding that an interpleader action brought by an insurance company to determine the proper beneficiary under an ERISA plan arises under 29 U.S.C. §§ 1132(a)(3)(B)(ii) and, therefore, presents a federal question); <u>Metropolitan Life Ins. Co. v. Cronenwett</u> 162 F.Supp.2d 889, 895 (S.D. Ohio 2001)(same).[2]

Turning to the merits of the claims, Plaintiff provides no authority for the proposition that the Court can simply ignore the alleged "defects" in the language of the QDRO approved by the state court and look instead to the "clear intent" of the parties as reflected in the Consent Order. This lack of authority is not surprising, as Plaintiff's position would appear to run afoul of the method designated under ERISA for an individual to attach an interest in a former spouse's plan benefits. As the Fourth

---

[2] Plaintiff also mentions, in passing, that if the Court declines to dismiss the action, it should stay this action pending resolution of the dispute in state court. Pl.'s Mot. at ¶ 14. Plaintiff provides no authority for a stay, and courts have denied such a request under similar circumstances. See <u>Davenport v. Davenport</u>, 146 F.Supp.2d 770 (M.D.N.C. 2001).

Circuit has noted, while ERISA allows the alienation of welfare benefits,

> [i]t further specifies how such an alienation or assignment should be accomplished in the domestic relations context - through a QDRO. See 29 U.S.C.A. §§ 1056(d)(3)(A), 1144(b)(7) (exempting only QDROs from the anti-alienation and preemption provisions). . . . We believe Congress made itself clear on this point - unless a domestic relations settlement complies with the QDRO requirements, ERISA preempts its enforcement."

Metropolitan Life Insurance Co. v. Pettit, 164 F.3d 857, 864-65 (4th Cir. 1998).[3]

---

[3] In so holding, the Fourth Circuit cited the following authority:

> Boggs [v. Boggs], 117 S.Ct. [1754] at 1763 [(1997)](noting that only QDROs, not domestic relations orders in general, are saved from ERISA's general preemption provision and pension plan alienation provision); Mattei v. Mattei, 126 F.3d 794, 809 (6th Cir. 1997) ("Where there is no QDRO ... awards of property pursuant to divorce decrees must fall before conflicting designations of ERISA beneficiaries."), cert. denied, 523 U.S. 1120, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 420-21 (6th Cir. 1997) (holding that although any domestic relations order might not be barred by the anti-alienation provision, ERISA preempts all orders except those that meet the strictures of a QDRO); Fox Valley & Vicinity Const. Workers Pension Fund v. Brown, 897 F.2d 275, 279 (7th Cir. 1990) (en banc) ("ERISA preempts any attempt to alienate or assign benefits by a domestic relations order if that order is not a

At present, the only QDRO that has been brought to the Court's attention is one that makes no mention, whatsoever, of pre-retirement death benefits or life insurance benefits. As to Virginia's portion of Defendant's interest in the Plan, the QDRO states, unequivocally, that it shall only be distributed to Virginia "when, if, and as paid" to Defendant,[4] and that the rights to payment terminate upon Virginia's death. While Plaintiff's counsel assured this Court, back in March of 2002, that he would file a motion to amend the QDRO in the state court, this Court has received no indication that this has occurred.

Based upon the record before it, the Court finds that Plaintiff is not entitled to benefits under the Plan. Accordingly, Defendant's motion for summary judgment will be granted. A separate order will issue.

/s/ William M. Nickerson
William M. Nickerson
Senior United States District Judge

Dated: September 23, 2002

---

QDRO.").

[4] It is undisputed that Plan benefits have not become payable to Defendant.